THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK BENNETT, | ) |
|                Plaintiff, | ) Civil Action No. 1:17-CV-01330-LJV |
| v. | ) |
| TDY INDUSTRIES, LLC | ) |
|                Defendant, | ) |
| AND | ) |
| ALLEGHENY TECHNOLOGIES, INC., | ) Hon. Lawrence J. Vilardo |
|                Defendant/<br>               Third-Party Plaintiff, | ) |
| v. | ) |
| STROM ENGINEERING CORPORATION, | ) |
|                Third-Party Defendant, | ) |
| AND | ) |
| TDY INDUSTRIES, LLC | ) |
|                Defendant/<br>               Fourth Party Plaintiff, | ) |
| v. | ) |
| STROM ENGINEERING CORPORATION | ) |
|                Fourth Party Defendant. | ) |

**<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ATI,
TDY AND STROM'S MOTIONS FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ............................. 1

ARGUMENT ............................................................................................................ 2

    I.    THE LEGAL STANDARD ................................................................... 2

    II.    STROM RETAINED SUBSTANTIAL CONTROL OVER ITS EMPLOYEES ....................................................................................... 3

        A. Strom's Agreements with ATI and Mr. Bennett Required Strom's Active Involvement and Management of Strom Employees ............................................................................... 3

        B. Strom Employed Full-Time On-Site Supervisors to Manage Strom Employees ....................................................... 4

        C. Mr. Bennett Was Trained and Supervised by a Strom Employee ........... 7

    III.    MR. BENNETT CANNOT BE A SPECIAL EMPLOYEE OF BOTH ATI AND TDY .................................................................................... 9

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page**

*Bellamy v Columbia Univ.*,
   50 A.D.3d 160, 164, 851 N.Y.S.2d 406, 410 (1st Dep't 2008)..............................................3

*Dube v County of Rockland*,
   160 A.D.3d 807, 808-809, 75 N.Y.S.3d 239, 241 (2d Dep't 2018) .........................................2

*Gadley v. U.S. Sugar Co.*,
   210 A.D.2d 983, 620 N.Y.S.2d 632 (4th Dep't 1994) ...............................................................2

*Gonzalez v Ari Fleet, LT,*
   83 A.D.3d 891, 893, 922 N.Y.S.2d 142 (2d Dep't 2011)...........................................................2

*Loglisci v Niko Assoc.*,
   303 A.D.2d 254, 755 N.Y.S.2d 838 (1st Dep't 2003) ................................................................2

*Oden v Chemung County Indus. Dev. Agency*,
   183 A.D.2d 998, 999, 583 N.Y.S.2d 854, 856 (3d Dep't 1992)................................................2

*Perkins v Dryden Ambulance, Inc.*,
   31 A.D.3d 859, 859-860 (3d Dep't 2006) .................................................................................2

*Rosato v Thunderbird Constr. Co.*,
   299 A.D.2d 670, 671-673, 749 N.Y.S.2d 601 (3d Dep't 2002) ................................................2

*Short v Durez Div.-Hooker Chems. & Plastic Corp.*,
   280 A.D.2d 972, 721 N.Y.S.2d 218 (4th Dep't 2001). ..............................................................3

*Thompson v Grumman Aerospace Corp.*,
   78 N.Y.2d 553, 557, 578 N.Y.S.2d 106, 108 (1991) ................................................................2

Plaintiff, Mark Bennett, submits this Memorandum of Law in opposition to defendants ALLEGHENY TECHNOLOGIES, INC's ("ATI"), TDY INDUSTRIES, LLC, ("TDY") AND STROM ENGINEERING CORPORATION'S ("STROM") motions for summary judgment based on the Worker's Compensation exclusivity defense.

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Defendants TDY and ATI mistakenly contend that Strom surrendered the right to control, direct and supervise plaintiff's work at the ATI facility, and that ATI/TDY assumed those responsibilities. The evidence developed in this case unrefutably belies that assertion, and this Court need look no further than defendants' own sworn pleadings, which admit that Strom personnel trained and supervised Mr. Bennett.

Defendants' Managers further testified that Strom provided on-site supervisors with daily management responsibilities, that Mr. Bennett was trained by a Strom "Group Leader" who instructed and supervised him and that Strom had an active presence on site and worked with ATI to manage and set expectations for Strom workers. The contract between ATI and Strom explicitly provided that Strom retained in its "sole discretion" the right to hire, fire or reassign a Strom employee, and defendants' managers conceded in sworn testimony that Strom employees were directed, trained and instructed in the means and methods of work by other qualified Strom workers.

As such, the defendants' defenses based on the exclusivity provisions under the Workers' Compensation law are inapplicable and defendants' motions for summary judgment should be denied and the Workers' Compensation exclusivity defenses should be stricken as a matter of law.

**ARGUMENT**

I. **THE LEGAL STANDARD**

The presumption of general employment is overcome only upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer. *Thompson v Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557, 578 N.Y.S.2d 106, 108 (1991) (citation omitted). It is not sufficient to show the surrender of only partial control by the general employer. The surrender of control must be shown to have been complete and concomitant with the proponent's complementary assumption of control, and the foregoing must be "incontrovertibly established." *Oden v Chemung County Indus. Dev. Agency*, 183 A.D.2d 998, 999, 583 N.Y.S.2d 854, 856 (3d Dep't 1992). Where supervisory control is "less than comprehensive and exclusive," the defendant will fail to establish the existence of a special employment relationship as a matter of law. *Loglisci v Niko Assoc.*, 303 A.D.2d 254, 755 N.Y.S.2d 838 (1st Dep't 2003) (*see also Rosato v Thunderbird Constr. Co.*, 299 A.D.2d 670, 671-673, 749 N.Y.S.2d 601 (3d Dep't 2002) and *Dube v County of Rockland*, 160 A.D.3d 807, 808-809, 75 N.Y.S.3d 239, 241 (2d Dep't 2018).

The right to discharge an employee and responsibility for payment of wages are relevant factors in assessing whether special employment exists. *See, e.g., Dube, supra,* 160 A.D.3d at p. 808; *Perkins v Dryden Ambulance, Inc.*, 31 A.D.3d 859, 859-860 (3d Dep't 2006); *Gonzalez v Ari Fleet, LT,* 83 A.D.3d 891, 893, 922 N.Y.S.2d 142 (2d Dep't 2011).

New York Courts have refused to find a special employment relationship where the purported special employer did not train or supervise the employee's work. *See Gadley v. U.S. Sugar Co.*, 210 A.D.2d 983, 620 N.Y.S.2d 632 (4th Dep't 1994) and where the general employer

2

"retained the authority to direct the employee to report to other locations, *see Short v Durez Div.-Hooker Chems. & Plastic Corp.,* 280 A.D.2d 972, 721 N.Y.S.2d 218 (4th Dep't 2001).

The law requires a showing of "actual control by the party claiming special employer status over the 'manner,' 'details' and 'ultimate result' of the work of the alleged special employee, *i.e.,* that there was between the employer and putative employee 'working relationship… sufficient in kind and degree' to justify deeming the defendant the plaintiff's employer." *Bellamy v Columbia Univ.,* 50 A.D.3d 160, 164, 851 N.Y.S.2d 406, 410 (1st Dep't 2008) (citations omitted).

## II.   STROM RETAINED SUBSTANTIAL CONTROL OVER ITS EMPLOYEES

### A. Strom's Agreements with ATI and Mr. Bennett Required Strom's Active Involvement and Management of Strom Employees

Although the contract between ATI and Strom provided that ATI could request removal of a Strom employee, it explicitly states that the right to hire, reassign or fire an employee was left in Strom's "sole discretion." *See* Exhibit A attached to affidavit of G. Scott Rantovich, at pps. 1-2, ¶ 3 (hereinafter "Rantovich affidavit") (Doc. 73-3). If ATI was not satisfied with a Strom employee, Strom and ATI were to "discuss a mutually acceptable resolution". *Id.* at p. 7, ¶ 16(a). Strom was designated as an independent contractor and was responsible to pay the wages and benefits of Strom employees and maintain all payroll records. *Id.*

Strom was also obligated to use its best efforts to prevent injuries to Strom employees at the ATI facility, *id.,* and it was required to provide personnel administration for all Strom employees and to "make all employment decisions". *Id.,* at p. 3, ¶ 6. Performance issues raised by ATI would be referred to Strom managers, who would "set expectations" with Strom employees. *See* Greenburg deposition, Exhibit C (Doc. 75-6) attached to Declaration of Eric Andrew at pp. 45-6 (hereinafter "Andrew Declaration"). If ATI was not satisfied with a Strom

3

employee, Strom and ATI would discuss a "mutually acceptable resolution." *See* Exhibit A attached to Rantovich affidavit, at p. 7, ¶ 16(a).

The ATI contract also required Strom to send an "assessment team" to the ATI facility to develop an operation plan that included implementation of a safety program for Strom employees. *Id.*, at p. A1, ¶ 1. Strom's assessment team was responsible for conducting a safety review to determine the adequacy of ATI's safety programs for Strom employees deployed at the ATI facilities. *Id.*

Project coordinators were assigned by Strom "to facilitate and coordinate the activities of its Service Employees both on and off the ATI premises." *Id.*, at p. A2, ¶ 3(b). The contract with ATI also provided for Strom's assessment team to attend various on-site or electronic meetings, including weekly project management meetings. *Id.*, at pp. A1-A2, ¶ 1.

### B.   Strom Employed Full-Time On-Site Supervisors To Manage Strom Employees

Strom supervisors interacted with Strom employees and managed the workforce daily.

Gary Greenburg, the director of safety and compliance for Strom, testified that Strom placed "coordinators" at the job site to assist and manage the Strom workforce:

> Q. Now, let's talk a little bit about the coordinators at the Lockport site, Mr. Rosa, and Mr. Garrity. You have an understanding of what it is they did at the site?
> A. Yes, sir. I have an understanding.
> Q. Okay. And what is your understanding?
> A. A coordinator position is a position that helps with the logistics … The coordinator also works with our clients in the sense of making sure that, you know, the employees that come there are put in the right job classification, get the right training. They also work with payroll, any HR issues come up, they are brought to our coordinators (sic) attention. If there are needs for more people or to reduce they work through the coordinator. So we're there to help assist, manage a temporary work force. We don't -- the coordinators do not give work direction.
>
> \*\*\*
>
> Q. [W]hat were the coordinators doing on a day-to-day basis?

4

> THE WITNESS: Anything from -- they could have been doing anything from walking the floor seeing how things are going, interacting with the employees, taking care of any concerns. Taking care of payroll, making sure - making sure production schedules haven't changed. Facilitate people traveling in and out of the facility. Their responsibilities were walk the floors, interact with employees, make sure everything was going smoothly, payroll, any HR issues. Making sure our employees could get in and out of the building. They're just helping manage the work force.

*See* Andrew Declaration Exhibit C (Doc. 75-6), at pp. 36-37 and 44.

Critically, Strom's Project Assignment Agreement with Plaintiff designated Craig Rosa, a Strom employee, as Mr. Bennett's supervisor on the job, and made clear that Bennett was to receive instructions from Strom as well as ATI. The Agreement further directed plaintiff to address any employment-related concerns with Strom management, and not with ATI. *See* Project Assignment Agreement, attached at **Exhibit A** to affidavit of David Marcus, at ¶ 2 (hereinafter "Marcus affidavit"). Strom Safety Director Gary Greenburg testified that the agreement required Mr. Bennett to abide by both Strom's and the customer's policies and procedures, and that it required Bennett to follow instructions and take direction from both Strom employees and representatives of the customer. Andrew Declaration Exhibit C (Doc. 75-6), at pp. 92-93.

Strom supervisor Jim Garrity met each morning with ATI's highest-ranking manager at the facility, Craig Romanowski. *See* relevant portion of Romanowski deposition, attached herein at **Exhibit B** to Marcus affidavit, at p. 17. Mr. Romanowski testified that Mr. Garrity was the "boss" and "lead supervisor" of the Strom employees, and that Garrity reminded him of a first sergeant. *See id.* at p. 17. ATI manager Stephen Peters, a production supervisor at the time of the accident, similarly testified that he understood that Strom workers would report to Garrity, "who would give [Strom employees] their instructions." *See* relevant portion of Peters deposition, attached herein at **Exhibit C** to Marcus affidavit, at p. 26.

5

Notably, it was Strom Supervisor Garrity who recommended moving Mr. Bennett into the furnace helper position after concerns were raised about Mr. Bennett's ability to handle the job. *See* transcript of testimony of Michael Diez, attached at Exhibit D to Andrew Declaration (Doc. 75-7) at pp. 94-5 and 98. Despite the concern, at the suggestion of Garrity, Mr. Bennett was "moved up" a position, further attesting to Strom's direct involvement and control of employees at the ATI facility. *See id.* at pp. 169-70.

Strom supervisors were more than simple administrators. They were required to take training classes offered to Strom employees, *see* Andrew Declaration Exhibit C (Doc. 75-6), at pp. 38-9, and were responsible for ensuring that the Strom employees actually received that training. *Id.* at pp. 72-3.

Strom supervisors acted as a liaison between Strom and ATI management. If a Strom employee was injured or there was a safety violation, the supervisors were required to notify Strom Director of Safety and Compliance, Gary Greenburg. *Id.* at p. 43. Strom would advocate for employees who felt uncomfortable or unsafe on the job; if the on-site Strom supervisor felt that a Strom employee was placed in an unsafe condition, "[the supervisor] would have pulled the employee." *Id.* at p. 121. Strom Safety Director Greenburg testified that if ATI was not meeting its safety obligations, Strom supervisors would step in to ensure its employees received the proper protection:

> Q. So the project coordinator for Strom would ensure that -- whatever the Strom employee needed from ATI that ATI would if whether it was additional training or clarification of training that the Strom coordinator would ensure that that got done; is that a fair statement?
> A.   Yeah, that's a fair statement. What I mean by that, if an employee felt uncomfortable or unsafe and they brought to ATI's attention and they did nothing about it, we wanted the employee to have an advocate there for them, that is what the project manager is to do.

*Id.* at p. 79.

### C. Mr. Bennett Was Trained and Supervised by a Strom Employee

As a furnace helper, Plaintiff was trained by and worked under Strom employee Joe Smith, who was designated a "Group Leader," which was a furnace operator who directed subordinates in a supervisory capacity. *See* Andrew Declaration Exhibit D (Doc. 75-7), at pp. 32, 40.

Michael Diez, the operations supervisor overseeing the furnace operations at ATI, testified under questioning from Strom's attorney that Joe Smith had the authority to instruct subordinate Strom employees on how to perform their jobs, and that Mr. Bennett was trained by and worked under Mr. Smith's supervision[1] as to the means and methods of performing the furnace helper job:

> Q. No employee of Strom would ever tell another employee of Strom how to do a job, they wouldn't have that authority at ATI, would they?
> MR. MARCUS: Objection to form.
> THE WITNESS: The only way Strom individuals would be able to do that is if they actually had been performing the job themselves for a while.
> BY MR. ADAMS:
> Q. Okay. They would have the authority to tell another Strom employee how to do a job at ATI, they would have that authority?
> A. *Yes. They are considered trained and have demonstrated the ability to perform the job. To continue to maintain a trained work crew, yeah, we would find individuals to work with the trained individuals to move the process along.*
> Q. Tell me what Strom employees had been provided with this supervisory status.
> A. No. They have not been provided supervisory status.
> Q. Okay. But without supervisory status, how could a Strom employee have authority to order another Strom employee to do anything?
> A. That's the way the shop floor is structured. Helpers report to operators. Operators report to furnace operators and vice versa.
> Q. *Okay. Who did Mr. Bennett report to?*
> A. *In this case, he was reporting to the person he was working with, Joe Smith and Mr. Peters.*
> Q. *Who is Joe Smith?*
> A. *That was the individual that was working with Mr. Bennett from Strom.*
> Q. *And he's a Strom employee?*

---

[1] On the evening of the accident, Strom Group Leader Joe Smith called in sick and was replaced by ATI manager Stephen Peters. That evening was the first time that Peters and Mr. Bennett worked together on stripping the furnace. *See* Marcus affidavit, Exhibit C, at p. 152.

7

*A. Yes.*
A. He had supervisory authority over Mr. Bennett?
Q. Not supervisory. He was working with Mr. Bennett to train him how to do that job.

\*\*\*

Q. *Okay. Did you tell Mr. Bennett the same thing, that he was to do anything that Mr. Smith said?*
A. *Yeah. That he was supposed to work with Mr. Smith to learn how to do the job, yes.*
Q. *But that Mr. Smith was his superior on the job and able to give him instruction as to means and methods?*
A. *Yes.*

Andrew Declaration Exhibit D (Doc. 75-7), at pp. 171-74 (emphasis added); *See also* plaintiff's deposition, attached to Andrew Declaration at Exhibit B (Doc. 75-5), at pps. 63-66.

The ATI Lockport facility head manager, Craig Romanowski, confirmed Diez' testimony. Mr. Romanowski testified that some Strom employees were given supervisory authority and acted in a dual capacity on behalf of Strom and ATI. *See* Marcus affidavit, Exhibit B at pp. 119-120. He also acknowledged that qualified Strom employees were authorized to provide instruction on the means and methods of the work that needed to be performed. *Id.* at pp. 117-18.

Defendants point out that plaintiff was being supervised by an ATI supervisor when he was injured. While it is true that TDY supervisor Stephen Peters was directing plaintiff at the time of the accident, that fact is irrelevant to whether ATI or TDY assumed complete control over the means and methods of plaintiff's employment. Peters filled in for Strom employee Joe Smith on the evening of the accident, and it was Smith, not Peters, who generally directed, supervised and trained plaintiff while he was a furnace helper. *See* Marcus affidavit, Exhibit C, at p. 152.

Defendants' assertions that only TDY employees had the authority to direct the means and methods of Strom employees' work is similarly refuted by the Project Assignment Agreement that directed plaintiff to take instructions from both Strom and ATI. It is refuted by the testimony of

8

TDY managers Romanowski—the highest-level manager at the Lockport plant—and from Mr. Diez, who was Mr. Peters' supervisor. Defendants notably omit any reference to Mr. Romanowski's sworn testimony in their moving papers.

Moreover, TDY admits in its Interrogatory responses to plaintiff that "[o]n-the-job training was provided by TDY employees and Strom employees" and further that "Strom personnel also supervised plaintiff". *See* TDY Interrogatory responses, attached at **Exhibit D** to Marcus affidavit, at responses to Interrogatories 1 and 2. TDY further alleges that Strom's failure to properly train and supervise plaintiff may have caused and contributed to his injuries. *Id.* at response to Interrogatory 5.

Similarly, ATI's Third-Party complaint against Strom (Doc. 8) and TDY's Fourth-Party complaint against Strom (Doc. 54) further allege that Strom must indemnify them as a result of Strom's failure to comply with OSHA regulations and because of Strom's negligence. *See* Doc. 8, at ¶¶ 9, 14 and 15; Doc. 54, at ¶ 11. These allegations made in defendants' sworn pleadings cannot be reconciled with their assertions on this motion that TDY assumed all control over Strom employees and that Strom surrendered that control.

### III. <u>MR. BENNETT CANNOT BE A SPECIAL EMPLOYEE OF BOTH ATI AND TDY</u>

Defendants ATI and its subsidiary company, TDY, represented by the same law firm, contend they are separate and independent companies, and that management at the Lockport facility were employed by TDY, and not ATI. ATI contends that, insofar as it does not exercise dominion and control over its TDY subsidiary, it cannot be liable in negligence.

First, the assertion that management at the Lockport facility were employed by TDY would come as a surprise to these employees, who testified that they understood they were employed by ATI and that TDY simply processed their paychecks. *See* Marcus affidavit, Exhibit C, at p. 10;

9

Andrews Declaration, Exhibit D (Doc. 75-7), at. pps. 7-8.  Similarly, Strom Safety Director Gary Greenburg testified that he never heard of TDY.  Andrews Declaration Exhibit C (Doc. 75-6), at pps. 61-62.

Secondly, the Service Agreement for Strom to provide employment services for the Lockport facility was between Strom and ATI.  That contract placed various obligations on ATI regarding safety and compliance with ATI safety practices, and with applicable federal and state laws, including OSHA regulations and New York State Labor laws. *See* Rantovich affidavit Exhibit A (Doc. 73-3), at pps. 3-4, ¶¶ 6 and 9(a).  ATI attests in the contract that "ATI has the corporate power and authority to enter into this Agreement and to perform its obligations under this Agreement. *Id.*, at p. 7, ¶ 16(b).  ATI's failure to perform its safety obligations under the contract is established insofar as it was cited and fined by OSHA for a "serious" violation pertaining to the accident at issue in this case.  Marcus affidavit **Exhibit E.**

To the extent ATI is independent from and does not control TDY, as it asserts, ATI would bear responsibility to plaintiff for injuries incurred as a result of ATI's failure to ensure compliance with the aforesaid safety practices, regulations and laws, resulting in plaintiff's injuries.  This is so regardless of whether or not plaintiff is deemed a special employee of TDY, which he is not.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that defendants' motions for summary judgment should be denied, and plaintiff's motion to strike defendants' affirmative defense based on the Worker's Compensation exclusivity rule should be granted.

Dated: December 10, 2021                          **MARCUS & CINELLI, LLP**

                                                                                                                          /s/ David P. Marcus
                                                            David P. Marcus
                                                            *Attorneys for Plaintiff, Mark Bennett*
                                                            8416 Main Street
                                                            Williamsville, New York 14221
                                                            Telephone: (716) 565-3800

11