UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK BENNETT,

                  **Plaintiff,**

    -v-                                       17-CV-1330-(JLS)(HKS)

TDY INDUSTRIES, LLC,

                  **Defendant/
                  Fourth-Party Plaintiff,**

and

ALLEGHENY TECHNOLOGIES, INC.,

                  **Defendant/
                  Third-Party Plaintiff,**

    -v-

STROM ENGINEERING CORPORATION,

                  **Third-Party Defendant/
                  Fourth-Party Defendant.**
_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #6. The case was subsequently reassigned to the Hon. John L. Sinatra, Jr. Dkt. #44.

Plaintiff Mark Bennett ("Plaintiff" or "Bennett") has brought negligence and New York State Labor Law ("NYLL") claims against defendants TDY Industries, LLC ("TDY") and Allegheny Technologies, Inc. ("ATI"), in connection with injuries he allegedly

1

sustained from a workplace accident.  *See* Dkt. #53.  ATI and TDY subsequently filed third- and fourth-party complaints, respectively, against Strom Engineering Corporation ("Strom"), seeking indemnification for Bennett's allegations.  Dkt. #8 (ATI's third-party complaint); Dkt. #54 (TDY's fourth-party complaint).

ATI, TDY, and Strom have now moved for summary judgment.  Dkt. #73 (ATI and TDY summary judgment motion); Dkt. #75 (Strom summary judgment motion).  In addition to opposing these motions, Dkt. #80, Bennett moved to strike ATI, TDY, and Strom's use of affirmative defenses based on New York workers compensation laws, Dkt. #76.  For the following reason, this Court denies Bennett's motion to strike,[1] recommends denying ATI and TDY's summary judgment motion, and recommends denying Strom's summary judgment motion.

## FACTUAL BACKGROUND[2]

Bennett's claims arise from injuries sustained while he was a worker at TDY's plant in Lockport, New York.  On November 17, 2015, TDY Supervisor Stephen Peters directed Bennett to unhook electrical and water lines from a furnace in the plant.  Dkt. #73-5 ¶¶ 2, 3, 33, 34.  When Bennett opened a furnace valve to unhook the water line,

---

[1] Because this Court is denying the motion to strike, the motion is not dispositive, and may be ruled on directly.  *See Barnes v. Compass Recovery Grp., LLC*, 1:21-CV-00591-LJV-MJR, 2021 WL 5609221, at *1 (W.D.N.Y. Oct. 5, 2021) ("A motion to strike affirmative defenses, if granted, is dispositive."), *report and recommendation adopted*, 21-CV-591-LJV-MJR, 2021 WL 5585938 (W.D.N.Y. Nov. 30, 2021).

[2] The following material facts are taken from ATI and TDY's statement of undisputed facts (Dkt. #73-5), Bennett's response to ATI and TDY's statement of undisputed facts (Dkt. #80-1), Strom's statement of undisputed facts (Dkt. #75-1), Bennett's response to Strom's statement of undisputed facts (Dkt. #80-2), ATI and TDY's response to Strom's statement of undisputed facts (Dkt. #78-2), and Strom's response to ATI and TDY's statement of additional undisputed facts (Dkt. #86; Dkt. #87).  As required, this Court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

scalding hot liquid was released and hit Bennett, causing serious burns and nerve damage. Dkt. #53 ¶¶ 12-14. The parties dispute who, if anyone, acted negligently or in violation of any labor laws in the events leading up to this accident. *See* Dkt. #80-1 ¶¶ 32, 33, 74.

The parties also dispute the precise nature of Bennett's employment at the time of the accident. TDY owns the plant where the accident occurred, and is a subsidiary of ATI. Dkt. #73-5 ¶¶ 1, 5. Sometime before Bennett's accident, several of ATI's subsidiaries, including TDY, were dealing with labor disputes and a threatened labor lockout. *Id*. ¶ 71. In the face of a labor lockout at the TDY Lockport plant, ATI entered into an agreement with Strom to provide employees capable of running the plant during the lockout. *Id*. ¶¶ 6, 71. Bennett was one of the replacement employees. *Id*. ¶ 6. The agreement contained a provision in which ATI and Strom agreed to indemnify one another and their respective affiliates for any liability arising from their own negligence or failure to comply with any applicable laws. Dkt. #75-1 ¶¶ 6, 7.

After this agreement was made, TDY officials began dealing with Strom officials to coordinate staffing the vacant positions. Dkt. #73-5 ¶ 9. The precise nature of TDY and Strom's influence over Bennett's employment is disputed. ATI, TDY, and Strom all contend that no Strom officials had any degree of control over Bennett once he began working at the TDY plant. *See id*. ¶¶ 8, 13, 20, 21. Bennett contends that Strom employees retained some level of involvement with his work through training, administrative services, and some direct supervision. *See* Dkt. #80-1 ¶¶ 8, 13, 18, 20, 21.

After the accident, Bennett collected workers compensation from Strom.  *See* Dkt. #80-2 ¶ 67.  He also filed the instant lawsuit against ATI and TDY in Erie County Supreme Court on December 1, 2017, alleging negligence and NYLL violations.  Dkt. #1-2 at 4.  The case was removed to this Court on December 26, 2017.  Dkt. #1.  ATI filed a third-party complaint against Strom on January 16, 2017, bringing contract and common law indemnification claims, contribution claims, and seeking declaratory judgment.  Dkt. #8.  Bennett then filed an amended and second amended complaint, Dkt. #46; Dkt. #53, and TDY filed a fourth-party complaint against Strom, Dkt. #54.

On October 14, 2021, ATI and TDY moved for summary judgment.  Dkt. #73.  Strom moved for summary judgment as well on October 15, 2021.  Dkt. #75.  That same day, Bennett moved to prevent ATI, TDY, and Strom from filing any affirmative defenses based on Bennett's receipt of workers' compensation benefits.  Dkt. #76.  Briefing for these motions has since concluded.

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party . . . ."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91,

4

93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; see *Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## DISCUSSION AND ANALYSIS

First, TDY and ATI argue that TDY was a "special employer" of Bennett's.  Dkt. #73-4 at 3, 4.  Therefore, because Bennett collected workers' compensation from his general employer, his claims against TDY and ATI are barred.  *Id*.  Strom joins in this argument as well.  Dkt. #75-11 at 7-9, 11-13.  Bennett opposes these arguments and moves to have TDI and ATI's workers' compensation affirmative defense stricken, asserting that Strom retained too much control over Bennett for TDY and ATI to be considered his "special employers."  Dkt. #76-1 at 15-18; Dkt. #80 at 6-12.

Second, TDY and ATI argue that TDY is merely a subsidiary of ATI, and that because the circumstances do not warrant corporate veil-piercing, all claims against ATI

5

fail.  Dkt. #73-4 at 4-8.  Strom adds that, even if veil piercing is warranted, Bennett's claims against ATI still fail because ATI is a mere alter ego of TDY and therefore may invoke TDY's workers' compensation defense.  Dkt. #75-11 at 9-11.  In opposition, Bennett argues that he does not rely on a veil piercing theory of liability against ATI, but that ATI committed its own acts of negligence and labor law violations.  Dkt. #80 at 12, 13.

Third, if any of Bennett's claims against TDY and ATI survive, Strom argues that the third- and fourth-party claims against it must fail because they are not covered by its indemnification agreement with ATI.  Dkt. #75-11 at 14-18.  These arguments are addressed in turn.

I. **Workers' Compensation Defense**

There is a reasonable dispute of fact as to whether TDY was a special employer of Bennett's.  Therefore, summary judgment based on TDY's and ATI's workers' compensation defense would be improper.

"[U]nder New York law, an injured party who receives workers' compensation cannot sue the employer . . . whose negligence caused his injuries . . . ."  *Isabella v. Koubek*, 733 F.3d 384, 388 (2d Cir. 2013) (discussing New York Workers' Compensation Law ("NYWCL") § 11 and § 29(6)); *Dermody v. Crothall Healthcare Inc.*, 21-cv-5838 (NSR), 2023 WL 5001412, at *4 (S.D.N.Y. Aug. 4, 2023) ("It is well settled that Worker's Compensation is the exclusive remedy for employees who are injured as a result of negligence attributable to their employer.").  Collecting workers' compensation also bars monetary relief from an employer under New York Labor Law ("NYLL") § 200.  *See Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 516 (2d Cir. 2022).

Furthermore, "[a] person may be deemed to have more than one employer for purposes of the Workers' Compensation Law, a general employer and a special employer." *Cipollone v. Aramark Healthcare Support Servs., LLC*, No. 10 CV 175(RML), 2012 WL 683578, at *3 (E.D.N.Y. Mar. 2, 2012) (quoting *Schramm v. Cold Spring Harbor Lab.*, 17 A.D.3d 661, 662 (2nd Dep't 2005)). "The receipt of Workers' Compensation benefits from a general employer precludes an employee from commencing a negligence action against a special employer." *Virnig v. United States*, 5:22-CV-775 (MAD/ATB), 2023 WL 4305217, at *6 (N.D.N.Y. June 30, 2023) (quoting *Pena v. Automatic Data Processing, Inc.*, 105 A.D.3d 924, 924 (2nd Dep't 2013)); *Reyes v. Crothall Healthcare, Inc.*, 17-CV-1003 (KAM)(VMS), 2019 WL 1050995, at *4 (E.D.N.Y. Mar. 5, 2019) ("The Workers' Compensation exclusive remedy bar applies to an employee who is both a general employee of one employer and a special employee of another employer."), *aff'd*, 794 F. App'x 132 (2d Cir. 2020).

Here, it is undisputed that Bennett collected workers compensation from Strom, his general employer. *See* Dkt. #75-1 ¶ 67; Dkt. #80-2 ¶ 67. Therefore, TDY would be able to invoke the workers compensation defense if it qualifies as a special employer. *See Virnig*, 2023 WL 4305217, at *6.

"Although categorization as a special employee is usually a question of fact, there is no per se rule that a question of fact always exists or that the question of special employment must go to a jury." *Reyes*, 2019 WL 1050995, at *5. "Many factors may be weighed in deciding the issue of special employment, but no one factor is decisive." *Id*. "These [factors] include: 1) the right to and degree of control by the alleged employer over the manner, details, and ultimate result of the work of the special

employee; 2) the method of payment; 3) the right to discharge; 4) the furnishing of equipment; and 5) the nature and purpose of the work." *Dermody v. Crothall Healthcare Inc.*, 21-CV-5838 (NSR), 2023 WL 5001412, at *4 (S.D.N.Y. Aug. 4, 2023) (quotations omitted). "Courts must also consider 'whether the plaintiff was aware of and consented to a special employment relationship.'" *Virnig*, 2023 WL 4305217, at *6. The first factor is the most significant. *Id.*; *Cipollone*, 2012 WL 683578, at *3; *Reyes*, 2019 WL 1050995, at *5.

Here, there is a reasonable dispute as to whether these factors indicate TDY was a special employer of Bennett. TDY, ATI and Strom all argue that TDY had exclusive control over Bennett's work, relying on the depositions of TDY Operations Superintendent Michael Diez, Plant manager Craig Romanowski, and Supervisor Stephen Peters. *See* Dkt. #73-5 ¶¶ 8, 13, 20, 21; Dkt. #73-1 at 30, 31 (170:9-171:21 of Diez deposition, testifying that Strom had no direct control over the actual performance of employees' jobs), 59 (97:9-16 of Romanowski deposition, testifying that all operators directing work involving furnaces were TDY employees), 75, 76 (168:9-169:15 of Peters deposition, testifying that Strom employees were instructed by TDI employees after being brought in). Strom also refers to testimony in Strom director of safety and compliance Gary Greenburg's deposition that Strom did not direct or supervise the operation of any machinery. *See* Dkt. #75-11 at 13 (citing Dkt. #76-6).

Bennett disputes each of these assertions, arguing that Strom employees retained some level of supervision and control over employee work. *See* Dkt. #80-1 ¶¶ 8, 13, 18, 20, 21. Bennett supports this assertion with interrogatory responses stating that Strom played a role in training employees, *see* 80-7 at 4 (response 1, admitting on

8

the job training provided in part by Strom employees), 5 (response 3, admitting training from Strom), 6 (response 4, same), and testimony from Greenburg indicating Strom trained and provided other administrative services to employees, Dkt. #76-5 at 16, 17, 22 (36:14-31:14, 44:2-45:4), 31 (79:2-18).  Most significantly, Diez also admitted in his deposition that under certain circumstances Strom employees would take a direct role in controlling other Strom employees' work.  See 76-6 at 46 (171:2-175:7).  Diez was unclear exactly how this relationship operated, stating that Strom employees were not "supervisors," but would still direct other Strom employees' work on occasion.  Id.  He also clearly stated that a specific Strom employee, Joe Smith, directed Bennett's work on the furnaces.  Id.  ATI and TDY's argument that Diez's testimony indicates Smith was merely a trainer, and not a supervisor, is inapposite.  See Dkt. #82 at 2.  Whether Smith acted in a training or ordinary supervisor capacity, Diez still clearly states that Smith was able to control Bennett on the means and methods of his work, creating a dispute as to the most important factor of the special employee analysis.  See Dermody, 2023 WL 5001412, at *4.  Similarly, Strom's arguments that Smith was himself controlled by TDY and absent on the night of the accident are unconvincing.  See Dkt. #85 at 7, 8.  At best, Smith being a Strom employee controlled by TDY employees creates a dispute of fact as to which entity he was acting for when he directed Bennett.  Likewise, Smith's absence on the specific night of the accident does not conclusively establish that the more general nature of Bennett's work was one of special employment for TDY.

Accordingly, because Strom appears to have retained some training and administrative authority over Bennett, and it is unclear what the exact parameters of

Strom's direct supervisory authority over Bennett were, this Court cannot say that the special employer factors weigh in TDY's favor as a matter of law.  The cases cited by Strom either provide no meaningful discussion of their respective underlying facts or are distinguishable.  *See Wilson v. A.H. Harris & Sons, Inc.*, 131 A.D.3d 1050, 1052 (2nd Dep't 2015) (offering no discussion of underlying facts behind special employer determination); *Bailey v. Montefiore Med. Ctr.*, 12 A.D.3d 545, 546 (2nd Dep't 2004) (same); *Davis v. Butler*, 262 A.D.2d 1039, 1040 (4th Dep't 1999) (finding the special employer's "complete control and supervision over plaintiff's work" outweighed the general employer paying the plaintiff's wages, providing an employee handbook, and paying workers' compensation claim).  Therefore, summary judgment on this issue should be denied.  However, the clear dispute over Strom's authority also bars striking the workers' compensation defense as a matter of law, as Bennett argues.  Accordingly, ATI, TDY, or Strom may attempt to establish this defense at trial.

## II.     Corporate Veil Piercing

Summary judgment for ATI on the grounds that it is a separate and distinct entity from TDY should be denied because Bennett does not rely on corporate veil piercing to impose liability on ATI.

"Under New York law, liability will be imposed upon a parent corporation through veil piercing where a plaintiff shows: (1) the parent corporation dominates the subsidiary in such a way as to make it a 'mere instrumentality' of the parent; (2) the parent company exploits its control to commit a fraud or other wrong, and (3) the plaintiff suffers an unjust loss or injury as a result of the fraud or wrong."  *Next Millennium Realty v. Adchem Corp.*, 690 F. App'x 710, 715 (2d Cir. 2017) (citing *Wm. Passalacqua*

*Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)). However, a parent corporation may still incur direct liability for its own conduct, even when veil piercing is not available, when its own personnel or management participate in the alleged misconduct. *See Sahu v. Union Carbide Corp.*, No. 04 Civ. 8825 JFK, 2012 WL 2422757, at *5 (S.D.N.Y. June 26, 2012) ("[T]he Supreme Court has noted that 'derivative liability cases are to be distinguished from those in which the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of. In such instances, the parent is directly liable for its own actions.") (quotations omitted) (citing *United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998)).

      ATI and TDY point to a multitude of facts indicating that they are separate entities such that ATI cannot be held liable for TDY's alleged misconduct. *See* Dkt. #73-4 at 4-8. However, these assertions are inapposite. There is a reasonable dispute as to whether several TDY employees directly responsible for overseeing Bennett were in fact operating on behalf of ATI. *See* Dkt. #80-6 at 3 (11:1-6 of Peters deposition, stating that he thought he worked for ATI); 75-7 at 3 (7:9-8:5 of Diez deposition, same); 75-6 at 62 (61:13-62:5 of Greenburg deposition, unaware of TDY's existence and believed to have been working with ATI). Likewise, ATI had its own contractual relationship with Strom, containing several assertions about ATI's safety and OSHA compliance responsibilities. *See* Dkt. #73-3 at 3, 4. ATI and TDY fail to address these arguments in their reply. *See* Dkt. #82 at 10 (simply restating that ATI and TDY are separate entities). Accordingly, their proffered veil piercing grounds for summary judgment fail.

11

Strom's additional argument that ATI would not be liable as an alter ego of TDY because of the workers' compensation defense also fails. *See* Dkt. #75-11 at 9-11. For the reasons discussed above, there are disputes of fact regarding whether TDY constitutes a special employer of Bennett. Accordingly, while ATI would be able to invoke TDY's workers' compensation defense as its alter ego, it cannot establish the defense beyond reasonable dispute at the summary judgment stage.

### III.     Indemnification Agreement

Strom argues that ATI and TDY's third- and fourth-party complaints fail as a matter of law because it cannot be disputed that Strom never acted negligently; therefore, it is not subject to the indemnification agreement with ATI. *See* Dkt. #75-11 at 15. However, there is a clear dispute as to whether the indemnification agreement applies to Strom because it may have negligently supervised or trained Bennett, and may have violated OSHA.

The parties do not dispute that Strom and ATI agreed to indemnify each other and their affiliates for any liability arising from their own negligent or OSHA-violating conduct. Dkt. #75-1 ¶¶ 6, 7; Dkt. #88-2 ¶¶ 6, 7. While Strom claims there is no evidence of its own "supervision direction and control" over Bennett, therefore barring any negligence claim against Strom, *id*. at 16, this is plainly disputed. As discussed above, there is a reasonable dispute as to whether any Strom employees supervised and/or trained Bennett. *See* Dkt. #80-1 ¶¶ 8, 13, 18, 20, 21. Furthermore, Strom also agreed to indemnify ATI and its affiliates for any OSHA violations. *See* Dkt. #75-1 ¶¶ 6, 7. Contrary to Strom's argument, Dkt. #75-11 at 14, the fact that the Department of Labor withdrew its proposed OSHA violation penalty against Strom does not necessarily

mean that Strom fully complied with OSHA, as the Department of Labor stated no grounds for the withdrawal in its stipulation. *See* 75-4 at 27. Accordingly, because there are no grounds to find that the indemnification agreement does not apply to Strom as a matter of law, summary judgment in Strom's favor would be improper.

## CONCLUSION

For the foregoing reasons, Bennett's motion to strike (Dkt. #76) is DENIED. Furthermore, it is recommended that ATI and TDY's motion for summary judgment (Dkt. #73) be DENIED, and that Strom's motion for summary judgment (Dkt. #75) be DENIED.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:     Buffalo, New York**
**September 7, 2023**

<u>s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**